[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-11939

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

KENNETH EARL HOOKS,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Northern District of Alabama
D.C. Docket Nos. 2:18-cr-00249-LSC-JHE-1,
2:19-cr-00136-LSC-JHE-1

2                    Opinion of the Court                    22-11939

_____

_____

No. 22-11942

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

KENNETH EARL HOOKS,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Northern District of Alabama
D.C. Docket Nos. 2:19-cr-00136-LSC-JHE-1,
2:18-cr-00249-LSC-1

_____

Before ROSENBAUM, BRANCH, and ANDERSON, Circuit Judges.

PER CURIAM:

Following a remand for resentencing, Kenneth Hooks appeals his total sentence of life imprisonment, imposed after he pleaded guilty in two cases pursuant to two written plea agreements, to four counts of production of child pornography, one count of coercion and enticement of a minor to engage in sexual activity, and one count of transportation of a minor for sexual purposes. Hooks argues that (1) the district court procedurally erred by misconstruing our mandate on remand; (2) the district court procedurally erred by failing to adequately explain the basis for its sentence and failing to consider his arguments in mitigation; and (3) the sentence imposed was substantively unreasonable.[1] The government, in turn, argues that the district court complied with our mandate on remand, and that Hooks's remaining arguments are waived by the sentence-appeal waiver in his plea agreements. In response, Hooks argues that the appeal waivers are not enforceable because the district court failed to adequately explain the waiver to him during the plea colloquy and he did not understand the implications of the waiver. We conclude that the district court complied with our mandate and that that the sentence-appeal waivers are valid and enforceable and bar Hooks's sentencing-related challenges. Moreover, notwithstanding the waiver, his claims fail on the merits. Accordingly, we affirm.

## I.    Background

---

[1] Hooks also argues that his case should be reassigned to a different judge on remand.

During a forensic search of a computer obtained from Hooks's residence pursuant to a search warrant issued as part of an investigation into an unrelated incident that occurred in California involving Hooks's girlfriend Sarah Morris, law enforcement discovered numerous still images and a ten-minute video depicting child pornography. Some of the images portrayed a sleeping female prepubescent minor approximately 4 or 5 years old with her pajama bottoms pulled back to expose her genitals, and another image depicted the sleeping prepubescent female minor's hand touching Hooks's penis.[2] Other still images depicted Hooks sitting in a chair nude, touching the genitals and buttocks of a nude prepubescent male approximately 5 or 6 years old—later determined to be one of Morris's sons. The ten-minute video depicted Hooks sexually assaulting, both vaginally and orally, a teenage female minor. Authorities later determined the teenage female was one of Hooks's daughters, and Hooks and Morris had moved the teenager from Mississippi to Alabama to live with them at the time of the video. During the video, the teenage female is depicted crying, screaming "no," attempting to resist, and is physically restrained by Hooks. Law enforcement determined that the images and video in question were produced in Alabama and the minor victims resided in Alabama.

Based on the images involving the prepubescent male minor, Hooks and Morris were each indicted in the Northern

---

[2] In total, 59 images of this female minor in various stages of undress were discovered on the computer.

District of Alabama on one count of production of child pornography, in violation of 18 U.S.C. §§ 2251(a) and (e), and 2, and one count of coercion and enticement of a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b) ("Case #1").

Hooks was also charged by Information in the Middle District of Alabama with three counts of production of child pornography, in violation of 18 U.S.C. §§ 2251(a) and (e), and one count of transporting a minor for the purpose of engaging in sexual activity, in violation of 18 U.S.C. § 2423(a) ("Case #2"), based on the images involving the prepubescent female minor and the video of the sexual assault on the teenage female minor.

Hooks pleaded guilty to all six charges stemming from both of his cases, pursuant to a written plea agreement in each case.[3] The plea agreements reflected that each of the production of child pornography counts (four counts in total) carried a statutory minimum term of 15 years' imprisonment and a statutory maximum term of 30 years' imprisonment. The plea agreements also reflected that both the enticement of a minor count and the transportation of a minor count carried a statutory minimum term of ten years' imprisonment and a statutory maximum term of life imprisonment.

_____

[3] Hooks consented to the transfer of Case #2 from the Middle District of Alabama to the Northern District of Alabama.

Both plea agreements contained identical sentence-appeal waivers.  The waivers stated as follows:

> In consideration of the recommended disposition of this case, I, Kenneth Earl Hooks, hereby waive and give up my right to appeal my conviction and/or sentence in this case, as well as any fines, restitution, and forfeiture orders, the court might impose. Further, I waive and give up the right to challenge my conviction and/or sentence, any fines, restitution, forfeiture orders imposed or the manner in which my conviction and/or sentence, any fines, restitution, and forfeiture orders were determined in any post-conviction proceeding, including, but not limited to, a motion brought under 28 U.S.C. § 2255, and any argument that (1) the statute(s) to which I am pleading guilty is or are unconstitutional or (2) the admitted conduct does not fall within the scope of the statute(s).

> The defendant reserves the right to contest in an appeal or post-conviction proceeding any or all of the following:

> (a) Any sentence imposed in excess of the applicable statutory maximum sentence(s);

> (b) Any sentence imposed in excess of the guideline sentencing range determined by the court at the time sentence is imposed; and

> (c) Any claims of ineffective assistance of counsel.

> The defendant acknowledges that before giving up these rights, the defendant discussed the Federal Sentencing Guidelines and their application to the defendant's case with the defendant's attorney, who explained them to the defendant's satisfaction. The defendant further acknowledges and understands that the government retains its right to appeal where authorized by statute.

> I, KENNETH EARL HOOKS, hereby place my signature on the line directly below to signify that I fully understand the foregoing paragraphs, and that I am knowingly and voluntarily entering into this waiver.

Hooks signed each page of the plea agreements, including the pages containing the sentence-appeal waivers, and he signed the paragraph in each agreement stating that he understood the appeal waiver and was entering into it knowingly and voluntarily. Hooks signed the plea agreement in Case #1 on January 25, 2019, and, approximately a month later on February 26, 2019, he signed the plea agreement in Case #2.

At the plea hearing in Case #1, Hooks confirmed that he had not had any alcoholic beverages, drugs, or medications that would interfere with his ability to understand the proceeding.[4] He also confirmed that he did not have any physical, mental, or emotional impairments that would interfere with his ability to understand the

---

[4] Hooks had an eighth-grade education.

proceeding. The district court then asked Hooks whether it was his initials and signature on the plea agreement, and Hooks confirmed that it was and that he had read the document. He also confirmed that his lawyer had reviewed the plea agreement with him, and that he understood the information in the agreement. The district court reviewed the charged offenses with Hooks and the potential punishments, including that Hooks faced the possibility of life imprisonment, and Hooks confirmed that he understood.

With regard to the sentence-appeal waiver, Hooks confirmed that it was his signature under the paragraph acknowledging the waiver, and he agreed with the court's statement that by signing the waiver, he acknowledged that he was "waiving or giving up [his] right to appeal or file a post-conviction petition except under certain circumstances listed above [his] signature." Hooks confirmed that he was pleading guilty freely and voluntarily because he was in fact guilty, and the district court accepted his plea in Case #1.

Similarly, at the plea hearing in Case #2, Hooks confirmed that he had initialed and signed the plea agreement, read it, and discussed it with his counsel. He also confirmed that, although he was now taking various prescription medications, he understood the proceedings and he was not under the influence of anything that would interfere with his ability to understand the proceedings. The district court reviewed the charged offenses with Hooks and the potential punishments, including that Hooks faced the

possibility of life imprisonment, and Hooks confirmed that he understood. With regard to the sentence-appeal waiver, Hooks confirmed that it was his signature under the paragraph acknowledging the waiver, and he agreed with the court's statement that by signing the waiver, he had "waived or given up [his] right to appeal or file a post-conviction petition except in the limited circumstances [listed] above [his] signature." Hooks confirmed that he was pleading guilty freely and voluntarily because he was in fact guilty, and the district court accepted his plea in Case #2.

The district court set a combined sentencing hearing for both of Hooks's cases. Hooks's applicable guidelines range was life imprisonment.[5] In terms of Hooks's background and personal history, his presentence investigation report ("PSI") indicated that Hooks's parents divorced when he was young and he was raised by his father. He suffered both physical and sexual abuse by multiple members of his family. Hooks's stepfather confirmed that Hooks was raped repeatedly and abused by multiple family members. Additionally, the PSI indicated that Hooks suffered from post-traumatic stress disorder, bipolar disorder, depression, and anxiety.

---

[5] Hooks filed a motion for a downward variance, requesting that the district court impose concurrent terms of 60 years' imprisonment in each case. Hooks asserted that "[a]s a 36 year old man, who will be 87 if he lives to serve 85% of a 720 month sentence, [such a sentence] is sufficient, but not greater than necessary to accomplish the stated purposes of sentencing as set forth in 18 U.S.C. § 3553(a)."

And at the time of his arrest, Hooks was using methamphetamine daily.

At Hooks's initial sentencing hearing, the district court viewed the video depicting the child pornography and a selection of still images presented by the government. Thereafter, the defense called forensic psychologist Dr. Sarah Boyd to testify as to her evaluation of Hooks. Dr. Boyd testified that Hooks was anxious during the evaluation and he cried a lot. While Hooks did not make any statements that directly minimized his conduct, he indicated that Morris was the "driving force behind why the focus would be on younger children, prepubescent children." Hooks expressed remorse and shame during the interview. Dr. Boyd explained that, in her expert opinion, Hooks suffered from (1) complex post-traumatic stress disorder (CPTSD)—otherwise known as developmental trauma—(2) a substance abuse disorder, with the primary substance being methamphetamine, and (3) also possibly bipolar disorder. She confirmed that Hooks's CPTSD and his substance abuse disorder were likely strong contributing factors to his offense conduct because individuals who have been victimized themselves sometimes go on to victimize other individuals in a similar manner and methamphetamine increases impulsivity and sexual interest and impairs judgment. On cross-examination, Dr. Boyd confirmed that she could not give an opinion as to whether Hooks would have committed the offenses but for his drug use and his traumatic childhood experiences. A letter from one of Hooks's children was also submitted on his behalf.

Hooks then made a brief statement to the court, apologizing for his actions and asking for mercy. The grandmother of the minor male victim made an oral statement to the court, asserting that Hooks traumatized her grandson, not only by sexually abusing him, but also by physically "whipping him with a switch," "making him stay outside," and being "mean" to him. She explained the male minor was in counseling and would "probably be in counseling the rest of his life." The teenage female minor depicted in the video submitted a written victim impact statement, stating that Hooks and Morris drugged her using a date rape drug and got her to use methamphetamines, that Hooks repeatedly raped her, and that he made her watch and participate in sexual encounters with young boys.

Before pronouncing Hooks's sentences, the district court stated as follows:

> You know, there is not a lot of difference between a life sentence and 720 months. There is a little bit of difference. But it seems like the majority of the brief, the motion, maybe I just read too much into it, was that 720 month sentence, you would be very elderly and have a chance to get out of prison. Well, the prison has opportunities for individuals to get out when their health deteriorates and such. But I don't think that a sentence that is under the guideline range is appropriate in this case.

> The guideline range is life. The conduct in this case was horrendous. It's always very difficult to see

conduct where an individual takes and abuses a child in that kind of manner. It's hard to see it, and I couldn't imagine experiencing it on the child's side. The factors that I am charged with the responsibility of enforcing are those in the sentencing statutes. And I believe that when you consider the nature and circumstances of the offense and your history and characteristics, as well as the need to protect the public from crimes that you might commit again, well, it calls out for a guideline sentence, which is life.

The district court then imposed the statutory maximum of a life sentence as to each of the enticement of a minor and transportation of a minor counts, and a 30-year sentence as to each of the production of child pornography counts, all terms to run consecutively. Hooks's counsel objected to the sentences as "being exceptionally unreasonable," and the district court noted in response that "this is a guideline sentence." The district court also noted in its statement of reasons that it imposed a sentence within the guideline range.

Hooks appealed the sentence to this Court, arguing, in relative part, that the district court failed to adequately explain the reasons for the sentence imposed.[6] *United States v. Hooks*, 829 F. App'x 948, 948 (11th Cir. 2020) (*Hooks I*). On appeal, we concluded

---

[6] In Hooks's initial appeal, because the district court ordered the sentences to run consecutively, the government noted that "the total sentence arguably was imposed in excess of the guideline sentencing range," which was one of the exceptions to the sentence-appeal waivers. Therefore, the government stated that it would not seek to enforce the appeal waivers.

that "there [was] tension between" the district court's statements that it imposed a guideline sentence and the total sentence imposed—two consecutive life sentences plus 120 years' imprisonment—"which we [could not] reconcile based on the record before us." *Id.* at 949. Accordingly, we vacated Hooks's sentences and remanded the case for resentencing. *Id.* We noted that, on remand, "[r]egardless of the sentence imposed, the district court must clarify if it is imposing a guidelines sentence or a variance. If it imposes a variance, the district court must state its reasons for imposing such sentence on the record in order to facilitate meaningful appellate review." *Id.* at 949 n.1.

On remand, Hooks filed an updated sentencing memorandum and a motion for downward variance. Hooks again requested a total sentence of 60 years (720-months), arguing that it was the "only reasonable sentence in this case." Hooks argued that the sentence would maintain parity between himself, Morris,[7] and

---

[7] Morris pleaded guilty to five counts related to the child pornography, and her guidelines range was also life. At her sentencing, the government filed a motion for downward departure based on her substantial assistance, pursuant to U.S.S.G. § 5K1.1, recommending concurrent sentences of 197 months' imprisonment in both cases. After hearing testimony from a law enforcement officer regarding Morris's cooperation and thorough efforts to aid the prosecution in apprehending and prosecuting Hooks and entertaining arguments of counsel and a statement by Morris, the district court granted the motion and imposed the government's recommended sentence to be followed by a lifetime of supervised release. The district court noted that but for her substantial assistance, Morris "would have received a life sentence . . . because the conduct is horrendous."

14                    Opinion of the Court                    22-11939

other similarly situated defendants, and was supported by the relevant § 3553(a) factors. Hooks also attached a number of documents to his motion, including a follow-up psychological assessment by Dr. Boyd.

The government requested that Hooks "spend the rest of his life in prison" so that he would never be "free to prey on children again." It noted that the court could either impose a guidelines sentence of life, with all sentences running concurrently, or impose the same sentences that it did before, but that such a sentence would constitute an upward variance.

At the start of the resentencing hearing, the district court stated that "the Eleventh Circuit remanded with directions that I either sentence the defendant concurrently for the two life sentences and 120 month sentence, or that if I run them consecutive[,] I further explain my decision. So, that's what we are here for." The following colloquy then occurred:

> [Hooks's counsel]: And your Honor, if I could disagree slightly with the court's interpretation of the mandate. Our position at this resentencing is that it's a complete resentencing. We understand that the court's not going to hear evidence that we could have presented at the original sentencing hearing, but the court can consider evidence of [Hooks's] rehabilitation over the past two years. And the court is not limited to the two options of either consecutive life sentences—

[District Court]:  I was expressing what I thought the Eleventh Circuit, but I certainly understand what you are saying.  It is a resentencing. . . .[8] I assume what you are referring to is I could vary down below the guideline range.

[Hooks's Counsel]:  Correct, Your Honor.

[District Court]:  I will listen to anything you have to present.  Do not go over evidence that we had before. I remember the case.

Hooks's counsel then called Dr. Boyd as a witness, stating that Dr. Boyd was going to supplement the testimony that she provided at the initial sentencing hearing.

Dr. Boyd explained that, at the time of her initial evaluation, Hooks had been using large amounts of methamphetamine for years, and there was a possibility that he might also have "a diagnosis of something like a schizophrenia spectrum disorder or bipolar disorder co-occurring with the methamphetamine substance abuse disorder."  However, now that Hooks had been in jail for some time and no longer had access to methamphetamine, it had

become clear that he does, in fact, have a co-occurring, separate disorder.  It has—with mood

---

[8] During this colloquy, the district court confirmed that neither Hooks nor the government had any objection to the PSI as originally calculated, adopted the PSI in full, and determined that the guideline range was life imprisonment.

> features, as well as psychosis type features.  It does appear to have a fusion of sorts with his trauma related symptoms in that a lot of his mood and anxiety and psychosis type symptoms are associated with preoccupations about victimization, about people posing threats perhaps to him or threatening him in the facility, and being very hyper vigilant about that.

> So he does—at this point I think we can say with significantly more confidence that there is a separate disorder in him; that the mental health symptoms that he was experiencing are not solely attributable to methamphetamine intoxication or methamphetamine effects that tend to be more persistent even after someone stops taking the drug.

She then opined that Hooks's bipolar disorder could have contributed to the underlying offenses because people with bipolar experience manic episodes, which can manifest in impulsivity, self-destructive behavior, and "an increase for many people in risky sexual behavior and libido."  She further opined that "the trauma history in his life contributed not only to the development of bipolar disorder but how it actually manifest[ed] in him in terms of including risky sexual behavior, and . . . the kind of fusion between trauma related symptoms and mood symptoms."  In her opinion, Hooks's methamphetamine use was "partly a consequence of the mental disorder," and the methamphetamine use increased Hooks's chances of experiencing "mood episode[s]."  Thus, both his methamphetamine use and his bipolar disorder were "relevant

factors in terms of understanding what happened with respect to the offense conduct." She noted that Hooks had been responding well to psychiatric medications in jail and was actively engaged in, and enthusiastic about, his participation in psychotherapy, counseling, and a drug education program. She then detailed additional treatments that she thought Hooks would benefit from—many of which she explained were not available in institutional settings.

Hooks then made a brief statement to the court, apologizing to the court and his victims "for all of the harm and terrible things" he did, and stating that he "accept[ed] the responsibility and consequences of [his] actions." He explained that "[i]t was never [his] intention[] to harm anyone" and that he had "been battling . . . both physical and mental abuse." He begged the court for forgiveness and mercy and to not sentence him to life.

Hooks's counsel argued for a 60-year sentence, emphasizing that such a sentence was appropriate in light of the 16-year sentence Hooks's codefendant, Morris, received for similar conduct. The district court pointed out that Morris cooperated and that she also stated that Hooks had provided her drugs, raped her, and forced her to do some of the things that she did related to the child pornography. Hooks's counsel stated that those were self-serving statements that she made only after she was arrested and after initially lying to police about her involvement. Hooks's counsel also argued that the court should consider the fact that Hooks pleaded guilty and saved the government and the victims

from a jury trial and accepted responsibility for his actions. Hooks's counsel further emphasized that the court should consider Hooks's "extreme history of trauma" and mental health and substance abuse because "a life without parole sentence doesn't give any weight to the fact that there were reasons why he ended up he way he did." Finally, Hooks's counsel noted that Hooks was "treatable," citing Dr. Boyd's testimony and reports.

The government stated that, although it was a good thing that Hooks was no longer using drugs and was getting treatment in prison, "he still need[ed] to be accountable for his egregious crimes against three innocent children who trusted him." Accordingly, the government requested concurrent sentences of life in Case #1 and 60 years in Case #2.

The district court then sentenced Hooks to concurrent terms of life for each count in Case #1 and concurrent terms of life in Case #2 as to Counts 1, 2 and 3, and 120 months' as to Count 4, with all the sentences running concurrently with each other. It noted that it was inclined to vary upward as it did before based on Hooks's conduct, but in light of government's position, it would impose a guideline sentence. It stated that it had considered the § 3553(a) factors, including "the conduct of this defendant and the need to protect society from his offenses, the nature and circumstances of the offense, and his history and characteristics."

Hooks's counsel objected to the sentence, arguing that the sentence was substantively unreasonable and that the district court

failed to adequately explain the reasons for the sentence imposed and why it rejected Hooks's arguments in mitigation.

In response, the district court stated that the sentence was based on Hooks's conduct and the "way he manipulated . . . the victims in this case," including his own daughter. The court also noted the method in which Hooks orchestrated Morris's participation in the criminal conduct. The court noted that it did not accept Dr. Boyd's opinion as to Hooks's low risk of reoffending. And, in any event, Dr. Boyd's testimony was not "sufficient to counter the need to protect society from [Hooks's] offenses and conduct, the need to punish him for his criminal conduct, [and] [Hooks's] absolute ability to manipulate people." The court then explained that Hooks could appeal the sentence, but that he may have waived his right to appeal if there was a sentence-appeal waiver in his plea agreement, and if he believed the waiver was unenforceable he should make that argument on appeal. Hooks timely appealed.

## II.    Discussion

### A.  *The district court complied with this Court's mandate*

Hooks argues that the district court procedurally erred when it misconstrued our mandate on remand "to require a life sentence[] be re-imposed and treating the Guidelines sentencing range as a mandatory floor." He maintains that the district court's statements at the start of the resentencing hearing demonstrate that it thought that it was precluded from varying downward from the guidelines.

We review *de novo* the district court's interpretation and application of our mandate in *Hooks I*. *United States v. Amedeo*, 487 F.3d 823, 829 (11th Cir. 2007). "[A] district court when acting under an appellate court's mandate, cannot vary it, or examine it for any other purpose than execution; or give any other or further relief[.]" *United States v. Tamayo*, 80 F.3d 1514, 1520 (11th Cir. 1996) (quotations omitted).

Hooks's claim is belied by the record. The record confirms that the district court did not treat the guidelines as a "mandatory floor," nor did it believe it was required to impose a life sentence. The record also demonstrates that the district court was well aware that it could vary upward or downward from the guidelines range, and the district court heard extensive argument from Hooks as to why a downward variance of 60 years' imprisonment from the guidelines range of life was appropriate. However, the district court did not find Hooks's arguments persuasive and it denied his motion for a downward variance, and it explained why it sentenced him to a guidelines sentence of life. Accordingly, he is not entitled to relief on this claim.

B. *Hooks's challenges to his sentence are barred by the sentence-appeal waivers in his plea agreements*

Hooks argues that his total life sentence is procedurally unreasonable because the district court failed to adequately explain the basis for the sentence, failed to consider his arguments in mitigation, and failed to consider the § 3553(a) factors. Relatedly, he argues that his sentence is substantively unreasonable because

there is a disparity between his sentence and the sentence Morris received as well as other individuals who have committed the same child pornography offenses, and that the § 3553(a) factors supported his requested sentence of 60 years' imprisonment. In response, the government argues that Hooks's sentencing-related claims are barred by the sentence-appeal waivers in his plea agreements. Hooks, in turn, argues the sentence-appeal waivers are unenforceable because the district court did not thoroughly explain or discuss the appeal waiver at either plea hearing and, based on the court's questioning, Hooks did not understand whether he was waiving his right to appeal his sentence as opposed to just his conviction.

"We review the validity of a sentence appeal waiver *de novo*." *United States v. Johnson*, 541 F.3d 1064, 1066 (11th Cir. 2008). We enforce appeal waivers that are made knowingly and voluntarily. *See United States v. Bascomb*, 451 F.3d 1292, 1294 (11th Cir. 2006); *United States v. Bushert*, 997 F.2d 1343, 1350–51 (11th Cir. 1993). To demonstrate that a waiver was made knowingly and voluntarily, the government must show that either (1) the district court specifically questioned the defendant about the waiver during the plea colloquy; or (2) the record makes clear that the defendant otherwise understood the full significance of the waiver. *Bushert*, 997 F.2d at 1351.

Hooks's argument that the sentence-appeal waivers are unenforceable because they were not explained to him adequately and he did not understand he was waiving his right to appeal his

sentence is refuted by the record.  The appeal waivers in each plea agreement were identical and stated unequivocally that, by entering the plea agreement, Hooks waived his "right to appeal [his] conviction and/or sentence in this case."  Each appeal waiver then set forth the exceptions to the waiver, explaining that Hooks could appeal if his sentence exceeded the statutory maximum or exceeded the guidelines range, and that he could pursue ineffective-assistance-of- counsel claims.  Hooks initialed each page of each of the plea agreements, including the appeal waiver, and he signed the statement proclaiming that that he "fully under[stood]" the waiver and that he "knowingly and voluntarily enter[ed] into [the] waiver."  Then, during both plea colloquies, he confirmed that he read the plea agreement, that his counsel also read the agreement to him, and that he understood it.  Additionally, the district court questioned Hooks about the appeal-waiver paragraph, and he confirmed that, by signing the waiver, he waived his right to appeal.  Thus, the record conclusively refutes Hooks's contention that he did not understand or knowingly and voluntarily enter the appeal waiver.[9]

Consequently, the record establishes that Hooks's sentence-appeal waivers were knowingly and voluntarily made and are enforceable.  *Bushert*, 997 F.2d at 1351; *see also United States v.*

---

[9] We also note that Hooks signed his plea agreements approximately a month apart and he had the benefit of two different change-of-plea hearings, and at no time did he indicate that he had a question about or otherwise did not understand the sentence-appeal waiver.

*Weaver*, 275 F.3d 1320, 1333 (11th Cir. 2001) (enforcing an appeal waiver where "the waiver provision was referenced during [the defendant's] Rule 11 plea colloquy and [the defendant] agreed that she understood the provision and that she entered into it freely and voluntarily"). Hooks's claims that his guideline sentence is procedurally and substantively unreasonable fall squarely within the scope of the appeal waiver. Accordingly, Hooks's claims are barred by the appeal waiver.

### C. Alternatively, Hooks's claims fail on the merits

Even assuming, arguendo, that the appeal waivers were unenforceable, Hooks's claims are meritless. As discussed previously, Hooks argues that his total life sentence is procedurally unreasonable because the district court failed to adequately explain the basis for the sentence, failed to consider his arguments in mitigation, and failed to consider the § 3553(a) factors. Relatedly, he argues that his sentence is substantively unreasonable because there is a disparity between his sentence and the sentence Morris received as well as other individuals who have committed the same child pornography offenses, and that the § 3553(a) factors supported his requested sentence of 60 years imprisonment.

We review a sentence for both procedural and substantive reasonableness under a deferential abuse of discretion standard. *See Gall v. United States*, 552 U.S. 38, 51 (2007). The burden rests on the party challenging the sentence to show "that the sentence is unreasonable in light of the entire record, the § 3553(a) factors, and

the substantial deference afforded sentencing courts." *United States v. Rosales-Bruno*, 789 F.3d 1249, 1256 (11th Cir. 2015).

With regard to his procedural challenges to the sentence, the district court explained its reasons for sentencing Hooks to life imprisonment, noting that the sentence was warranted due to the nature and circumstances of the offense, Hooks's history and characteristics, the need to protect the public from future crimes, and the need to adequately punish Hooks. Those reasons correspond with the § 3553(a) factors that the district court is instructed to consider when determining the appropriate sentence. *See* 18 U.S.C. § 3553(a). Although Hooks may disagree with how the district court weighed the relevant factors, the weight given to a particular § 3353(a) factor "is committed to the sound discretion of the district court," and it is not required to give "equal weight" to the § 3553(a) factors. *Rosales-Bruno*, 789 F.3d at 1254 (quotation omitted). Moreover, "[w]e will not second guess the weight given to a § 3553(a) factor so long as the sentence is reasonable under the circumstances." *United States v. Butler*, 39 F. 4th 1349, 1355 (11th Cir. 2022).

The district court also expressly noted that it considered the mitigation-related testimony of Dr. Boyd, but that it was not persuaded by it. The fact that the district court did not address Hooks's mitigation arguments in further detail does not mean that the district court failed to consider them. *See Amedeo*, 487 F.3d at 833 (explaining that the district court's failure to discuss the defendant's mitigating evidence does not "mean[] that the court

erroneously 'ignored' or failed to consider this evidence in determining [the] sentence"). Thus, Hooks is not entitled to relief on his claim that his sentence is procedurally unreasonable.

Hooks's argument that his sentence is substantively unreasonable is similarly unpersuasive. Although Morris was convicted of some of the same offenses and received a lesser sentence, there is no concerning sentencing disparity between Hooks and Morris.[10] Morris received a lesser sentence based on the substantial assistance she provided the government. Furthermore, there are potentially mitigating facts in Morris's case—that Hooks provided her drugs, raped her, and forced her to take some of the actions she took—that are not present in Hooks's case. More importantly, while Morris may have filmed and helped otherwise facilitate the conduct in this case, Hooks was the perpetrator of the sexual acts in the images and the video. Thus, Hooks is not similarly situated to his codefendant. *See United States v. Johnson*,

---

[10]  Hooks cites to a number of other child pornography-related cases in which defendants received lesser sentences. All Hooks has offered regarding those cases are the crimes of conviction, the resulting sentences, and a few barebones factual allegations; even taken together, that minimal information is insufficient for us to make a proper comparison for purposes of evaluating any alleged sentencing disparity. *See United States v. Azmat*, 805 F.3d 1018, 1048 (11th Cir. 2015) (explaining that courts "need[ ] to have more than the crime of conviction and the total length of the sentences to evaluate alleged disparities" and that "[t]he underlying facts of the crime and all of the individual characteristics are relevant"). Thus, Hooks has not carried his burden to show specific facts establishing that he is similarly situated to the defendants in the referenced cases. *Id.*

980 F.3d 1364, 1386 (11th Cir. 2020) (rejecting disparity claim because "[d]efendant ha[d] not carried his burden to show specific facts establishing that any codefendants are similarly situated").

While the district court imposed the statutory maximum sentence in this case, that sentence is within the applicable advisory guidelines range and is substantively reasonable in light of the § 3553(a) factors. Hooks's conduct in this case was particularly egregious—Hooks sexually assaulted his own daughter to produce child pornography in addition to the other images that involved very young children. We have expressed that "the more serious the criminal conduct is the greater the need for retribution and the longer the sentence should be." *Irey*, 612 F.3d at 1206 (*en banc*). Further, as we have repeatedly emphasized, "[c]hild sex crimes are among the most egregious and despicable of societal and criminal offenses." *Id*. (alteration in original) (quoting *United States v. Sarras*, 575 F.3d 1191, 1220 (11th Cir. 2009)). And "[w]hen child pornography is produced in conjunction with the sexual abuse of children, as it was here, the harm to the child victims is magnified and perpetuated." *Id*. at 1208; *see also United States v. Pugh*, 515 F.3d 1179, 1195–96 (11th Cir. 2008) (discussing the impact that child pornography has on the victims). As a result, we have frequently upheld lengthy sentences in cases involving child sex crimes. *See, e.g.*, *United States v. Hall*, 965 F.3d 1281, 1297–99 (11th Cir. 2020) (upholding as reasonable a 480-month sentence for receipt of child pornography, which was an upward variance of 300 months from the guideline range); *United States v. McGarity*, 669 F.3d 1218, 1254, 1264 (11th Cir. 2012) (upholding as reasonable life sentences for

engaging in a child exploitation enterprise), *abrogated on other grounds by Paroline v. United States*, 572 U.S. 434 (2014); *Sarras*, 575 F.3d at 1196, 1220–21 (upholding as substantively reasonable a total 1,200 month sentence for three counts of knowingly persuading a minor to engage in sexually explicit conduct and one count of knowingly possessing child pornography); *United States v. Johnson*, 451 F.3d 1239, 1240, 1244 (11th Cir. 2006) (upholding as reasonable consecutive sentences totaling 140 years for producing and distributing child pornography).  Under the circumstances of this case, we cannot say that the district court's decision to impose the statutory maximum of life imprisonment was an abuse of discretion.

**AFFIRMED.**