In the

# United States Court of Appeals

### for the Seventh Circuit

No. 21-1734

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

LAFIAMMA C. ORONA,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 20-cr-00049-DRL-MGG-1 — **Damon R. Leichty**, *Judge.*

ARGUED FEBRUARY 23, 2022 — DECIDED OCTOBER 1, 2024

Before SYKES, *Chief Judge*, and FLAUM and KANNE,* *Circuit
Judges.*

SYKES, *Chief Judge.* Lafiamma Orona was indicted for mail
theft, identity theft, and other crimes stemming from his
months-long scheme of stealing mail—including credit cards,

---

* Circuit Judge Kanne died while this case has been under advisement, so
the appeal is being resolved by a quorum of the panel. *See* 28 U.S.C.
§ 46(d).

checks, and other personal identifying documents—from mailboxes in Elkhart County, Indiana. About six weeks before trial, he pleaded guilty to all charges.

An offender who enters a timely guilty plea and truthfully admits his offense conduct receives a two-point reduction in his offense level under the Sentencing Guidelines. *See* U.S.S.G. § 3E1.1(a). An additional one-level reduction is possible, but only if the government requests it by filing a motion affirming that the defendant's acceptance of responsibility saved prosecutorial and court resources. *Id.* § 3E1.1(b). Structured this way, the guideline vests the government—not the court—with the authority to determine whether the conditions for the third-point credit have been met.

The district judge awarded the two-level reduction, but the prosecutor declined to move for the extra one-level reduction, citing Orona's baseless challenge to the loss amount, which required the government to prepare documents and witnesses to prove that guidelines enhancement at sentencing. Orona objected to the government's refusal to move for the third point, essentially asking the judge to order the prosecutor to do so. The judge overruled the objection, holding that the government had permissibly withheld the § 3E1.1(b) motion based on Orona's frivolous challenge to the loss amount.

That ruling was clearly correct under circuit precedent. *See United States v. Nurek*, 578 F.3d 618 (7th Cir. 2009), and *United States v. Sainz-Preciado*, 566 F.3d 708 (7th Cir. 2009). Orona maintains that the Sentencing Commission abrogated *Nurek* and *Sainz-Preciado* in 2013 when it adopted Amendment 775, which modified the application notes to § 3E1.1. We disagree and affirm the judgment. Amendment 775 did not displace

*Nurek* and *Sainz-Preciado*, so the judge correctly overruled Orona's objection.

## I. Background

In 2020 law enforcement in Elkhart County opened an investigation into reports of stolen mail. Witness accounts and security-camera footage linked the thefts to the driver of a silver Chevrolet Malibu Maxx, so the police issued an "Attempt to Locate" notice for the vehicle. In May officers in Bristol, a small town in the county along the Indiana-Michigan border, spotted a car matching the description. As they initiated a traffic stop, the driver threw a methamphetamine pipe out the window and the front-seat passenger tossed a handgun from the car.

Lafiamma Orona was the driver, his girlfriend Toni Hall was the front-seat passenger, and their three children were seated in the back. The officers recovered the broken pieces of the meth pipe and the discarded firearm, which had an obliterated serial number. They then searched the vehicle and discovered 37 rounds of ammunition that matched the discarded handgun. They also found a bag containing stolen credit cards, checks, money orders, and Indiana identification cards, together with a stamp used to forge names on already issued checks. Orona's name was forged on some of the checks; his photo appeared on the identification cards with the victims' names and personal identifying information.

Orona was arrested and admitted to stealing mail from local mailboxes. When he arrived at the jail, he called his mother and instructed her to go to Hall's home across the border in Michigan and destroy incriminating evidence in the house. Before she could do so, officers obtained and executed a

search warrant at Hall's Michigan home. There they found more stolen mail containing credit cards and checks, some of which had been altered to substitute Orona's name for the victims' names. Officers also recovered additional Indiana identification cards with Orona's photo but with others' personal identifying information and more materials used to forge checks. Credit-card statements found at the home showed that credit cards had been issued to Orona in others' names but with his contact information. The face value of the forged checks recovered from the car and Hall's home totaled $226,244.

Orona was indicted for possession of stolen mail, 18 U.S.C. § 1708; mail fraud, *id.* § 1341; aggravated identity theft, *id.* § 1028A; and possession of a firearm as a felon, *id.* § 922(g)(1). About six weeks before trial, Orona pleaded guilty to all four counts without a plea agreement. The judge accepted Orona's guilty pleas and directed the probation department to prepare a presentence report ("PSR").

The probation office circulated the draft PSR about a month before the sentencing date. To calculate the advisory imprisonment range under the Sentencing Guidelines, the probation officer recommended the application of various offense-level enhancements for the stolen-mail, mail-fraud, and firearm counts. Under the grouping rules, the combined offense level for these counts was 25. (The conviction for aggravated identity theft required a mandatory 24-month consecutive sentence, *see* 18 U.S.C. § 1028A(b), so that count was not grouped.) The probation officer also recommended a two-level reduction in the offense level for acceptance of responsibility under § 3E1.1(a), plus the additional one-level

reduction under § 3E1.1(b), for a total recommended offense level of 22 for the grouped counts.

Orona's appeal concerns the extra one-level reduction under § 3E1.1(b), so we pause here to describe the terms of this guideline. Subsection (a) of § 3E1.1 instructs the sentencing judge to reduce the offense level by two levels "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." Under subsection (b) of § 3E1.1, the defendant may receive an additional one-point reduction if the offense level prior to applying subsection (a) is 16 or greater *and the government* requests the extra one-point reduction after determining that the defendant's guilty plea has saved prosecutorial and court resources.

More specifically, the court may award the additional one-level reduction only

> *upon motion of the government* stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently.

§ 3E1.1(b) (emphasis added).

Returning to this case, four of the PSR's recommended offense-level enhancements are important to Orona's appeal. As relevant here, the probation officer recommended that the court increase Orona's offense level as follows:

> (1) two levels because the offense involved more than 10 victims (based on the

     government's estimate of 253 victims), *see* § 2B1.1(b)(2)(A)(i);

(2) two levels based on Orona's unauthorized transfer or use of a means of identification, *see* § 2B1.1(b)(11)(C)(i);

(3) two levels because Orona attempted to obstruct justice by directing his mother to destroy evidence, *see* § 3C1.1;[1] and

(4) 10 levels because the total loss amount was more than $150,000 but less than $250,000 (based on the government's estimate of $226,244 in intended losses), *see* § 2B1.1(b)(1)(F)

After reviewing the draft PSR, Orona's attorney contacted the prosecutor and asked how the intended loss amount had been calculated. The prosecutor responded that the $226,244 total was the sum of the face-value amounts on the stolen checks recovered from the car and Hall's house. The prosecutor also confirmed that there were no actual out-of-pocket losses because Orona had not cashed any of the stolen checks.

Later that day Orona filed written objections challenging all four enhancements. As relevant here, he argued that (1) there were fewer than 253 victims; (2) he did not actually obstruct justice because his mother took no action to destroy

---

[1] The guidelines commentary recognizes the tension between adjusting a defendant's offense level upward for obstruction of justice *and* downward for acceptance of responsibility. *See* U.S.S.G. § 3E1.1 cmt. n.4. No one challenges the application of both adjustments here.

evidence; (3) the total intended loss was "$6,500 or less" because, among other reasons, he did not possess the checks recovered from Hall's home; and (4) applying the enhancement for unauthorized use of a means of identification was impermissible "double counting."

The government's response to the draft PSR agreed that the enhancement for unauthorized use of a means of identification was inapplicable because the sentencing package included a conviction for aggravated identity theft under § 1028A. The prosecutor also acknowledged that the number of victims was not as high as its original estimate of 253. But law enforcement had documented at least 46 victims, so the two-level enhancement under § 2B1.1(b)(2)(A)(i)—applicable to offenses involving more than 10 victims—remained appropriate. Finally, the government endorsed the PSR's recommendations regarding the obstruction and loss-amount enhancements.

Because Orona had lodged objections to the PSR's recommended guidelines adjustments, the government took the position that he was not clearly accepting responsibility for purposes of § 3E1.1. The prosecutor acknowledged that the court would decide whether to award the two-level reduction in subsection (a), but he signaled that the government would not move for the additional one-level reduction under subsection (b).

Orona insisted that his objections were legal, not factual, and therefore could not be grounds for denial of credit for acceptance of responsibility. He submitted a revised set of objections stating that he "continue[d] to accept responsibility for his crimes but objects to an improperly designated loss

amount." This revised filing removed his previous claim that he was not in possession of the checks found in Hall's home.

The prosecutor stood his ground on the relevant-conduct enhancements and argued that Orona's continued objections were inconsistent with acceptance of responsibility. He maintained that the court should not award the two-level reduction under § 3E1.1(a) and made it clear that he would not seek the additional one-level reduction under § 3E1.1(b).

As the sentencing date approached, the lawyers attempted to resolve the dispute. They agreed that if Orona withdrew his remaining objections to the guidelines enhancements, the government would support the baseline two-level reduction for acceptance of responsibility under § 3E1.1(a). The government did not, however, agree to move for the additional one-point reduction under § 3E1.1(b). Orona's attorney pressed the prosecutor to reconsider, threatening to accuse the government of violating discovery rules and its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963). The prosecutor was unmoved.

Once the final PSR and addenda were submitted to the court, the parties filed written sentencing memoranda. Given the nature and extent of the defense objections and the government's response, the judge vacated the sentencing date and scheduled a bifurcated sentencing proceeding, starting with a hearing for submission of evidence and argument on the guidelines objections, followed by a later sentencing date. In the meantime, the government formally notified the probation office that it would not move for the additional one-level reduction for acceptance of responsibility under § 3E1.1(b). Orona withdrew his objections to the guidelines enhancements that same day.

At the evidentiary hearing a few weeks later, the government submitted a thumb drive containing numerous documentary exhibits, photos of the traffic stop and search of Hall's home, and videos of Orona's post-arrest interview by law enforcement. By then Orona had withdrawn his objections to the enhancements, so the judge turned almost immediately to the question of Orona's acceptance of responsibility. The bulk of the lengthy hearing was devoted to the parties' dispute over the government's refusal to file a motion for the third-level reduction under § 3E1.1(b).

The prosecutor explained that he had declined to seek the third-point reduction because Orona's objections to the relevant-conduct enhancements required the commitment of resources to prepare for a contested sentencing hearing. He said his office and law enforcement had spent around 40 hours preparing to prove up the challenged enhancements, including gathering evidence and preparing a federal agent and two state law-enforcement officers to testify to the number of victims and the loss amounts. The government had also ordered Orona's plea transcripts on an expedited basis to help prove the enhancements. Orona's attorney had requested impeachment information on the witnesses, so the government spent time preparing that information too. In short, Orona's objections to the PSR's recommended guidelines enhancements required the government to allocate resources to proving up his relevant offense conduct at sentencing.

Orona's attorney responded that his client's guilty plea had spared the government the burden of trial preparation, and nothing more was required for the additional one-point reduction under § 3E1.1(b). He also argued that the

government had violated discovery rules and its *Brady* obligations. The judge took the dispute under advisement.

At the sentencing hearing two months later, the judge ruled—without objection from the government—that Orona had clearly accepted responsibility for purposes of the two-level reduction under § 3E1.1(a). But the judge also held that the government had permissibly withheld the motion for the third-level reduction under § 3E1.1(b) based on Orona's baseless denial of relevant conduct. Specifically, the judge determined that by disputing the loss amount, Orona had falsely asserted that the checks found in Hall's home were not in his possession. As the judge put it, the evidence "overwhelmingly" showed that Orona possessed the checks and that he did so with the purpose or intent to defraud. Indeed, Orona had called his mother from jail and instructed her to destroy the incriminating evidence in Hall's home.

In sum, the judge concluded that Orona's frivolous objection to the loss amount (and relatedly, his objection to the obstruction enhancement) had forced the government to prepare to prove his relevant conduct at a contested sentencing hearing. Although Orona eventually withdrew his objections, the government had already sunk resources into preparing to prove the guidelines enhancements. The judge also rejected Orona's argument that the government had violated its discovery and *Brady* obligations.[2]

In the end, the judge calculated a final offense level of 22 for the stolen-mail, mail-fraud, and firearm counts, which when combined with Orona's criminal history category of VI

---

[2] On appeal Orona acknowledges that his trial attorney's allegations of discovery and *Brady* violations were unfounded.

produced an advisory imprisonment range of 84 to 105 months for those counts (subject to the maximum penalty of 60 months on the stolen-mail count). After weighing the sentencing factors under 18 U.S.C. § 3553(a), the judge imposed concurrent sentences of 84 months for the mail-fraud and firearm convictions, a concurrent 60-month sentence for the stolen-mail conviction, and the mandatory consecutive sentence of 24 months on the conviction for aggravated identity theft—for a total term of 108 months in prison.

## II. Discussion

On appeal Orona challenges only the judge's ruling on the third acceptance-of-responsibility point under § 3E1.1(b). He argues that the government lacked the discretion to withhold the § 3E1.1(b) motion. As he reads the guideline, saving *trial* resources is all that counts for the third-point reduction. On this view, objections to sentencing enhancements do not matter; his timely guilty plea permitted the government to avoid preparing for trial and thus *entitled* him to the third acceptance-of-responsibility point under § 3E1.1(b).

Orona acknowledges, as he must, that this argument is foreclosed by circuit precedent—namely *Nurek* and *Sainz-Preciado*. He argues that those decisions are no longer good law based on the Sentencing Commission's Amendment 775, which revised the guidelines commentary to § 3E1.1. To place this argument in proper context, a bit of background about the acceptance-of-responsibility guideline is necessary.

The current requirements and procedure for awarding the extra offense-level reduction under § 3E1.1(b) are the result of an unusual congressional amendment of the guideline in 2003. Before then, the district court alone determined whether

a defendant was entitled to the extra one-point reduction. *See United States v. Branch*, 195 F.3d 928, 936–37 (7th Cir. 1999). In the PROTECT Act of 2003, Congress took the uncommon step of amending the guidelines itself, giving *the government* the authority to determine whether the defendant's acceptance of responsibility supports the extra one-point offense-level reduction. *See* PROTECT Act, Pub. L. No. 108-21, § 401(g)(1)(A), 117 Stat. 650, 671 (2003).

As amended by the PROTECT Act, subsection (b) of § 3E1.1 conditions the additional one-level reduction on a motion from the government stating that the defendant has

> assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, *thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently.*

*Id.* § 401(g)(1)(B), 117 Stat. at 671 (emphasis added).

To reinforce this shift in authority from the court to the government, Congress also amended the application notes as follows: "Because the Government is in the best position to determine whether the defendant has assisted authorities in a manner that avoids preparing for trial, an adjustment under [§ 3E1.1(b)] may only be granted upon a formal motion by the Government at the time of sentencing." *Id.* § 401(g)(2)(B), 117 Stat. at 672. And Congress went a step further to preserve these amendments from later modification by the Sentencing Commission by expressly providing that "[a]t no time may the Commission promulgate any amendment that would

alter or repeal the amendments made by subsection (g) of this section." *Id.* § 401(j)(4), 117 Stat. at 673.

With authority over the third acceptance-of-responsibility point now firmly in the government's hands, courts were faced with questions about the scope of the prosecutor's discretion. In 2009 we broadly interpreted the 2003 amendments as "a license for prosecutorial discretion" that "confers an entitlement *on the government*" to determine whether to give the defendant extra credit under § 3E1.1(b). *United States v. Deberry*, 576 F.3d 708, 710 (7th Cir. 2009). *Deberry* held that the government could permissibly withhold the § 3E1.1(b) motion based on the defendant's refusal to consent to an appeal waiver in his plea agreement. *Id.* We added, however, that the government "may not base a refusal to file a motion under [§] 3E1.1(b) on an invidious ground" or "on a ground unrelated to a legitimate governmental objective." *Id.* at 711. But securing an appeal waiver is neither invidious nor unrelated to legitimate governmental interests; on the contrary, it saves the government "the expense and uncertainty of having to defend the defendant's conviction and sentence on appeal," which is a legitimate governmental objective "closely related to the express criteria in subsection (b)." *Id.*

Our decisions in *Nurek* and *Sainz-Preciado*—also issued in 2009—rested on a similarly broad interpretation of the 2003 congressional amendments. We concluded in both cases that the government may withhold the § 3E1.1(b) motion based on the defendant's objection to sentencing enhancements. *Nurek*, 578 F.3d at 624–25; *Sainz-Preciado*, 566 F.3d at 716. Citing *Deberry*, we observed in *Nurek* that the government's discretion to withhold a § 3E1.1(b) motion is "quite broad, though not limitless; the government may not base a refusal to file a

motion under section 3E1.1(b) on an invidious ground, or …
on a ground unrelated to a legitimate governmental objec-
tive." 578 F.3d at 625 (internal quotation marks omitted). But
objecting to relevant conduct reflects a failure to accept full
responsibility and requires the prosecution to sink resources
into proving the full scope of the defendant's criminal con-
duct at sentencing—a legitimate basis to withhold the
§ 3E1.1(b) motion. *Nurek*, 578 F.3d at 625; *Sainz-Preciado*,
566 F.3d at 716. A contested sentencing hearing is an "added
burden to both the government and the court system," giving
"the government good reason (if it needed one) not to file a
§ 3E1.1(b) motion." *Sainz-Preciado*, 566 F.3d at 716.

After our decisions in *Deberry*, *Nurek*, and *Sainz-Preciado*, a
circuit split emerged on the scope of the government's discre-
tion under § 3E1.1(b). The Fourth Circuit expressly rejected
*Deberry* and cases in other circuits that had reached the same
conclusion. In *United States v. Divens*, the court held that the
government may not withhold the § 3E1.1(b) motion based on
the defendant's refusal to waive his appeal rights. 650 F.3d
343, 348 (4th Cir. 2011). The Fourth Circuit reasoned that the
text of § 3E1.1(b) "reveals a concern for the efficient allocation
of *trial* resources, not *appellate* resources." *Id.*

The Second Circuit soon extended *Divens* to sentencing
challenges, ruling that the government may not withhold the
§ 3E1.1(b) motion based on a defendant's good-faith objection
to factual assertions in a presentence report. *United States v.
Lee*, 653 F.3d 170, 174–75 (2d Cir. 2011). Drawing on the ra-
tionale in *Divens*, the Second Circuit held that because the pri-
mary condition for the extra one-level credit is a timely guilty
plea that "permit[s] the government to avoid preparing for
trial," § 3E1.1(b), the language that follows about the efficient

allocation of governmental and court resources refers only to *trial* resources, not *sentencing* resources. *Id.* at 174. The court thus held that "[a]s long as the defendant disputes the accuracy of a factual assertion in the PSR in good faith," the government may not withhold the § 3E1.1(b) motion. *Id.*

Two years later we were faced with a request to reconsider our circuit precedent based on *Divens* and *Lee*. In *United States v. Davis*, we acknowledged the emerging circuit split about the scope of the government's discretion but declined to change course, concluding again that § 3E1.1(b) "confers an entitlement *on the prosecutor*, not on the defendant." *United States v. Davis*, 714 F.3d 474, 475 (7th Cir. 2013) (per curiam). *Davis*, like *Deberry*, concerned a defendant who had refused to waive his right to appeal, leading the prosecutor to withhold the § 3E1.1(b) motion. On appeal the defendant insisted that "a motion from the prosecutor is mandatory whenever the defendant pleads guilty early enough to spare the prosecutor the burden of trial preparation." *Id.* We disagreed, reiterating our holding in *Deberry* that "[t]he prosecutor may withhold such a motion for any reason that does not violate the Constitution." *Id.* By then four other circuits had lined up on the *Deberry* side of the divide. *Id.* (collecting cases). Changing sides would not eliminate the conflict, so we left the resolution of the issue to "the Supreme Court or the Sentencing Commission." *Id.* Judge Rovner agreed but wrote separately to endorse *Divens* and *Lee* and urge the Commission to address the split. *Id.* at 478–80 (Rovner, J., concurring).

Roughly six months later, the Commission adopted Amendment 775. As relevant here, the Commission added this language to application note 6 to § 3E1.1: "The government should not withhold … a [§ 3E1.1(b)] motion based on

interests not identified in § 3E1.1, such as whether the defend-
ant agrees to waive his or her right to appeal." U.S.S.G. supp.
to app. C, amend. 775 (Nov. 1, 2013) (codified at § 3E1.1 cmt.
n.6, deleted by U.S.S.G. supp. to app. C, amend. 820 (Nov. 1,
2023)).

In announcing the amendment, the Commission ex-
plained that it had set out to resolve the circuit split over
"whether the government may withhold a motion based on
an interest not identified in § 3E1.1." *Id.* Citing both *Deberry*
and *Divens*, the Commission discussed the existing circuit
split over whether a defendant's refusal to waive his appellate
rights is a legitimate reason for the government to withhold
the motion. On that point the Commission was clear: "[T]he
defendant's waiver of his or her right to appeal is an example
of an interest not identified in § 3E1.1." *Id.* The language of
Amendment 775, and the Commission's explanation of the
reasons for it, thus speak directly to the question of appeal
waivers. *See United States v. Johnson*, 980 F.3d 1364, 1385 (11th
Cir. 2020) (noting that "it is clear that the Government can no
longer base its refusal to move for a third-level reduction on a
defendant's refusal to waive appellate rights").

Beyond that, however, things get murkier. In its explana-
tion of Amendment 775, the Commission cited *Lee* only
briefly, at the end of its discussion of *Divens* and our remark
in *Davis* calling on the Commission to resolve the circuit con-
flict. Our decisions in *Nurek* and *Sainz-Preciado* are not men-
tioned.

Given this ambiguity, Orona's argument that Amendment
775 abrogated *Nurek* and *Sainz-Preciado* falls far short of the
mark. We will not overturn circuit precedent "absent a com-
pelling reason." *Wilson v. Cook County*, 937 F.3d 1028, 1035 (7th

Cir. 2019) (per curiam). We have overruled circuit precedent interpreting the guidelines only when an amendment to an application note is "unequivocal" about when the guideline applies. *United States v. Krumwiede*, 599 F.3d 785, 790 (7th Cir. 2010); *see also United States v. Longoria*, 958 F.3d 372, 379 (5th Cir. 2020) (requiring that a guidelines amendment "clearly overrid[e]" circuit precedent).

As we've just noted, it's clear enough that Amendment 775 abrogated our decision in *Deberry* concerning the effect of a defendant's refusal to agree to an appeal waiver. Another part of Amendment 775 clarified that the sentencing judge has the discretion to deny the government's § 3E1.1(b) motion; this change clearly displaced our contrary holding in *United States v. Mount*, 675 F.3d 1052 (7th Cir. 2012). *See United States v. Loving*, 22 F.4th 630, 635 (7th Cir. 2022). In *Loving* we recognized that the amendment explicitly addressed a circuit split on this subject and "was intended to resolve the conflict against the *Mount* position by endorsing a sentencing court's discretion to deny such a motion." *Id.*

The effect of Amendment 775 on our decisions in *Nurek* and *Sainz-Preciado* is not nearly so clear. To repeat, the amendment added this sentence to application note 6: "The government should not withhold … a [§ 3E1.1(b)] motion based on interests not identified in § 3E1.1, such as whether the defendant agrees to waive his or her right to appeal." Though this language is not limited to the appeal-waiver issue, there is "no consensus on what other grounds can justify the Government's refusal to make a § 3E1.1(b) motion." *Johnson*, 980 F.3d at 1385.

Section 3E1.1(b) does not, on its face, limit the government's discretion to considerations related to preserving trial

resources. The third acceptance-of-responsibility point is expressly conditioned on the prosecutor's determination that the defendant's timely guilty plea "permitt[ed] the government to avoid preparing for trial *and* permitt[ed] the government and the court to allocate their resources efficiently." § 3E1.1(b) (emphasis added). In *Nurek* and *Sainz-Preciado* we interpreted this conjunctive language broadly to include considerations beyond the preservation of trial resources—specifically, to permit the government to withhold the § 3E1.1(b) motion if a defendant's objection to a guidelines enhancement requires it to allocate resources to preparing to prove the contested matter at sentencing. Amendment 775 did not *unequivocally* displace those decisions.

Orona resists this conclusion, arguing that other language in § 3E1.1's application notes demonstrates that subsection (b) is concerned only with saving trial resources. He points, for example, to the PROTECT Act's amendment to application note 6, which explains that the third-level reduction requires a motion from the government "[b]ecause the [g]overnment is in the best position to determine whether the defendant has assisted authorities *in a manner that avoids preparing for trial*." § 3E1.1 cmt. n.6 (emphasis added). Application note 6 also explains that the defendant's notice of his intention to plead guilty must come "at a sufficiently early point in the process *so that the government may avoid preparing for trial* and the court may schedule its calendar efficiently." *Id.* (emphasis added).

This language, however, predates *Nurek* and *Sainz-Preciado*. Nothing in Amendment 775 requires us to reconsider those decisions. No one disagrees that the defendant's notice of his intention to plead guilty must permit "the government to avoid preparing for trial." § 3E1.1(b). But subsection (b)

goes on to state that the defendant's acceptance of responsibility must also permit "the government and the court to allocate their resources efficiently." *Id.* This language expands the considerations that may permissibly inform the government's exercise of its § 3E1.1(b) discretion. Amendment 775 said very generally that the government should not withhold the motion based on "interests not identified in § 3E1.1." § 3E1.1 cmt. n.6. (2013) (deleted by U.S.S.G. supp. to app. C, amend. 820 (2023)). But § 3E1.1 as a whole refers to efficiency considerations that go beyond just those related to trial preparation. *See also id.* cmt. n.1(A).

And even after Amendment 775, the circuits continued to disagree over whether the government may withhold the § 3E1.1(b) motion based on a defendant's challenge to guidelines enhancements. *Compare United States v. Castillo*, 779 F.3d 318, 325 (5th Cir. 2015) (endorsing *Lee*, at least for good-faith challenges to the PSR, in light of Amendment 775), *with United States v. Jordan*, 877 F.3d 391, 395–96 (8th Cir. 2017) (disagreeing with *Castillo* and holding that the Commission was aware of *Lee*'s holding but did not expressly endorse it in Amendment 775). Overruling *Nurek* and *Sainz-Preciado* would not resolve the conflict. So we stay put, because "it is rarely appropriate to overrule circuit precedent just to move from one side of a conflict to another." *United States v. Corner*, 598 F.3d 411, 414 (7th Cir. 2010) (en banc).

We note for completeness that while this appeal has been pending, the Third Circuit held that Amendment 775 exceeds the Commission's delegated powers. *See United States v. Adair*, 38 F.4th 341, 358–61 (3d Cir. 2022). The Commission thereafter amended § 3E1.1(b) and its application notes again. *See*

§ 3E1.1, amend. 820 (effective Nov. 1, 2023). The latest amendments are not retroactive, so we do not address them here.

Because Amendment 775 did not clearly abrogate *Nurek* and *Sainz-Preciado*, the government permissibly declined to file a § 3E1.1(b) motion based on Orona's frivolous objection to the intended loss amount. The judge correctly overruled Orona's objection. The judgment is therefore AFFIRMED.