**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 24-12044
Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

FRANCISCO JAVIER MONTANO-ORTIZ,
   a.k.a. Carlos,

*Defendant-Appellant.*

————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:18-cr-20925-DMM-1

————————————

Before LAGOA, ABUDU, and WILSON, Circuit Judges.

PER CURIAM:

Francisco Javier Montano-Ortiz appeals his 180-month sentence for conspiracy to distribute five kilograms or more of

cocaine, knowing that it would be imported into the United States. On appeal, Montano-Ortiz argues that his sentence is substantively unreasonable.[1]  After careful review, we affirm.

## I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

In November 2018, Montano-Ortiz was indicted for conspiring to distribute at least five kilograms of cocaine, knowing that this cocaine would be imported into the United States, 21 U.S.C. §§ 959(a), 960(b)(1)(B) & 963.  He was extradited from Colombia and arraigned in the Southern District of Florida in 2023.  He later pled guilty without a plea agreement.  During his guilty plea hearing, the parties discussed the nature of the offense.  Specifically, the court summarized the elements of Montano-Ortiz's charged offense, noting that these elements included: "[t]hat two or more people agreed, in some way, to try to accomplish a shared and unlawful plan to distribute cocaine" and that Montano-Ortiz "knew the unlawful purpose of the plan and willfully joined in it . . . ."  Montano-Ortiz said he understood the elements of the crime and he did not object.

---

[1] As we discuss below, Montano-Ortiz's appeal raises more of a procedural unreasonableness challenge than a substantive one; he primarily argues the district court clearly erred in finding he conspired to traffic at least 450 kilograms of cocaine.  That said, our precedent has not always been consistent in its categorization of procedural and substantive reasonableness challenges, *see* *United States v. Curtin*, 78 F.4th 1299, 1314–26 (11th Cir. 2023) (Newsom, J., concurring), and we need not decide which framework is a better fit because, under either, Montano-Ortiz's appeal fails.

The government then summarized the facts which it stated it could prove at trial. "[B]etween January 2014 to about November 2018, a group of individuals conspired together with" Montano-Ortiz "to send cocaine from Colombia to Central America," knowing and understanding that some of that cocaine would be imported to the United States. "More specifically," Montano-Ortiz "attended meetings," planned for "shipments" of cocaine, "and directed others to assist by transporting cocaine within Colombia to points where the cocaine could be loaded in vehicles departing Colombia." He also "agreed . . . to be responsible" for providing certain quantities of cocaine to other co-conspirators who would pay for the drugs and ship them north. The government asserted that "[o]ver the course of the conspiracy," Montano-Ortiz "supplied over 10,000 kilograms of cocaine" to co-conspirators.

Montano-Ortiz objected to the government's description of the facts in one respect. While he agreed that he was responsible for "more than five kilograms" of cocaine, as charged in the indictment, he denied that he was responsible for more than 10,000 kilograms of cocaine. Besides this point, however, Montano-Ortiz agreed with the government's factual description of his offense. The court accepted Montano-Ortiz's plea and set the case for sentencing.

In advance of sentencing, a probation officer prepared a presentence investigation report ("PSI"), which described Montano-Ortiz's offense conduct in greater detail. Between January 2014 and about November 2018, Montano-Ortiz participated in a

conspiracy to transport cocaine produced in laboratories from Colombia to the United States, through Central America. The PSI calculated that Montano-Ortiz conspired to transport more than 10,000 kilograms of cocaine. In August 2017, authorities seized 270 kilograms of cocaine in Colombia and were able to attribute that quantity to Montano-Ortiz based on communications they had intercepted. A cooperating witness reported meeting with Montano-Ortiz several times to discuss cocaine shipments and recalled Montano-Ortiz stating he "had access to cocaine laboratories that could produce almost any quantity of cocaine" and "had the ability to send the cocaine by semi-submersible vessels or speed boats from the pacific Coast of Colombia."

The PSI calculated Montano-Ortiz's guidelines range using the 2023 Sentencing Guidelines manual. First, based on a total drug weight responsibility of "at least 10,000 kilograms," the PSI calculated that his base offense level was 28, U.S.S.G. § 2D1.1(a)(5) & (c)(1).[2] The PSI then assigned him a two level enhancement for being "an organizer, leader, manager, or supervisor" of the relevant criminal activity, U.S.S.G. § 3B1.1(c), and a total three level reduction for accepting responsibility for his offense, U.S.S.G. § 3E1.1(a), (b). This led to a total offense level of 37. The PSI noted that Montano-Ortiz had no criminal history, so it calculated his guidelines range to be 210 to 262 months. It also explained that

---

[2] Of importance here, Section 2D1.1 provides that the base offense level of 38 applies to an offense involving "450 K[ilograms] or more of Cocaine." U.S.S.G. § 2D1.1(c)(1) (2023).

Montano-Ortiz faced a mandatory minimum 10-year term of imprisonment and a statutory maximum term of life imprisonment. The PSI also included various personal information about Montano-Ortiz. This included information stating he had been in custody for similar charges in Colombia since 2019 and he faced removal from the United States upon the conclusion of his sentence.

Montano-Ortiz objected to the PSI. First, he objected to the drug weight because, he explained, the PSI only supported the finding that he had been involved in the August 2017 seizure. He "t[ook] responsibility for his involvement in [that] seizure and agree[d] that" the 270 kilograms of cocaine involved in that event "should be attributed to him for the purposes of the guideline calculation." That said, he argued no evidence supported the conclusion that he was involved with any more than that, with nothing to show more than 450 kilograms of cocaine in total. Montano-Ortiz also made several objections not relevant on appeal, including regarding a two-level reduction under U.S.S.G. § 4C1.1 and his two-level enhancement under U.S.S.G. § 3B1.1(c). Based on all of these objections, Montano-Ortiz argued that his guidelines range should be 108 to 135 months' imprisonment.

Montano-Ortiz also moved for a downward variance, arguing that the factors in 18 U.S.C. § 3553(a) supported a mandatory minimum 120 months' sentence. He maintained that he had been working in prison in Colombia for around five years and had become a mentor to other prisoners. He also noted that he had no prior criminal history and that applying the highest level of the

drug quantity table in the Sentencing Guidelines overstated his criminal culpability.  He explained that he would likely face further imprisonment, in poor prison conditions, upon his return to Colombia, for the same conduct at issue in this case.  The government disagreed with Montano-Ortiz's objections and provided the specifics of various communications, which showed Montano-Ortiz's awareness of many more kilograms of cocaine than the 270 involved in the November 2017 incident.  It also argued that a guidelines sentence was appropriate, as Montano-Ortiz had a significant role in the conspiracy and his conduct in prison in Colombia was not mitigating.

At sentencing, the court noted that there were outstanding objections to the PSI, and the government explained it would present evidence through Drug Enforcement Agency ("DEA") Special Agent Jeffrey Baumert, who would discuss the drug weight calculations and Montano-Ortiz's role in the conspiracy.

Baumert testified that he had been a Special Agent with the DEA for around 10 years and had been investigating cocaine trafficking operations between Colombia and other countries in Central America.  He explained that the DEA had intercepted messages sent on BlackBerry messengers and text messages, in part based on Montano-Ortiz's disclosure of his BlackBerry PIN to a confidential source, who provided it to law enforcement.  Baumert then testified about several messages intercepted by Colombian police and the context in which those messages were sent.

First, in June 2017, law enforcement in Panama seized 100 kilograms of cocaine. Baumert was able to confirm that amount from law enforcement sources outside of Montano-Ortiz's messages. Around that time, Montano-Ortiz and a co-conspirator discussed this seizure and "passed some photos," including "one of an individual who had been arrested," and another "of a TV news report showing the vehicle being stopped by police." In those messages, the co-conspirator told Montano-Ortiz: "cousin, they got them."[3] Baumert testified these messages, along with others not explicitly discussed, showed that Montano-Ortiz and his co-conspirator were discussing the 100-kilogram seizure in Panama in June 2017.

Next, in August 2017, 270 kilograms of cocaine were seized in Colombia. During that time, Montano-Ortiz sent a message to a co-conspirator who stated that they were "going towards Cartagena," and that they had "230 kilos, and 150 of them [we]re ours, and 80 [we]re" the property of another individual. Even though this conversation only discussed 230 kilograms, Baumert believed that the messages showed the load was seized and was therefore referencing the 270-kilogram shipment that was seized in Colombia in the same time period.

Baumert then discussed a third seizure of cocaine, which occurred in November 2017. In that circumstance, approximately

---

[3] Baumert translated these messages from Spanish to English during the sentencing hearing. Montano-Ortiz did not object to the translation during the hearing and does not challenge it on appeal either.

836 or 838 kilograms of cocaine were seized in Costa Rica. Messages from Montano-Ortiz to co-conspirators established, in Baumert's view, that Montano-Ortiz was unconcerned about this seizure because it occurred "as [the cocaine] was getting into Costa Rica on the water." Based on Baumert's understanding of drug trafficking, this meant that Montano-Ortiz "was free of responsibility" because "he had passed possession of the shipment to another group of drug traffickers and this other group . . . lost the load while it was in their possession; therefore, it was not Mr. Montano-Ortiz's responsibility . . . ." Baumert also testified to other messages where Montano-Ortiz tried to negotiate a buyer for 100 kilograms of cocaine in Florida. These messages discussed "a couple hundred" kilograms "being en route to Florida."

Baumert then testified about Montano-Ortiz's role in the trafficking operation. Baumert explained that messages showed that Montano-Ortiz stated that he had multiple "labs" in Colombia, and Baumert knew that labs could "produce thousands of kilos" of cocaine in a year. In addition, confidential informants also confirmed that Montano-Ortiz "held" himself "out" as "an owner of labs in Colombia that could produce large quantities of cocaine."

On cross-examination, Baumert testified that some of his conclusions were not explicit in the record—for instance, his assertion that Montano-Ortiz's BlackBerry PIN was being used by Montano-Ortiz—but he explained that circumstantial evidence, including calls in which Montano-Ortiz identified himself, was sufficient to support these conclusions. Baumert also testified that the

24-12044                Opinion of the Court                9

governments of other countries, like Costa Rica and Colombia, test the cocaine they seize themselves, and the DEA relies on those tests rather than testing the cocaine themselves. At the close of his testimony, the government introduced the exhibits Baumert had discussed as evidence. Montano-Ortiz did not object during Baumert's testimony.

The parties then presented argument on whether the government had satisfied its burden. First, the government noted that Montano-Ortiz had stipulated to 270 kilograms. Thus, it argued that if the court found that the June 2017 seizure of 100 kilograms of cocaine in Panama and the 836 kilograms of cocaine seized in Costa Rica were attributed to Montano-Ortiz, the base offense level of 38 would be correct. In sum, the government argued that, even though it was unclear whether every package in every photo was cocaine, the total quantity "[wa]s astronomical" and far above 450 kilograms.

Montano-Ortiz argued that Baumert's testimony was not probative because he was not involved in the case, was "just reviewing the file," and the DEA did not "have firsthand knowledge" of many of the allegations it made against him. He noted that no co-conspirators or confidential informants had identified him in court or confirmed his identity. He also noted that many of the other pieces of evidence were not particularly strong, as the government was "filling in things that are not readily apparent from [the text] messages to reach the conclusion" that he was responsible for so much cocaine.

After the parties' arguments, the district court overruled each of Montano-Ortiz's objections. First, it noted that Montano-Ortiz agreed to the seizure of 270 kilograms of cocaine. Then it noted that the other two shipments the government mentioned, of 100 and 836 kilograms, totaled well more than 1,000 kilograms. It found that this was supported by the other evidence as well, including the photos of multiple bales of cocaine and other discussions in the text messages, and concluded that the amount was "far in excess of 450 kilograms." Accordingly, the court calculated Montano-Ortiz's guidelines range to be 210 to 262 months' imprisonment. It then asked the parties for their arguments on an appropriate sentence.

Montano-Ortiz argued that his post-arrest conduct had been mitigating, and it had now been five years since his arrest. He contended that his post-arrest work and mentorship showed that he had acknowledged "that he did something wrong" and wanted to change his behavior going forward. He also noted that he had spent time in prison under harsh conditions in Colombia and, while the court was not obligated to give a reduction on that basis, he argued it was relevant to the 18 U.S.C. § 3553(a) factors. He also reiterated he would face additional imprisonment upon his return to Colombia.

The government, in turn, argued that the delay in extradition was Montano-Ortiz's own doing, so it was not mitigating. Further, it highlighted Montano-Ortiz's key role in the trafficking organization as the owner and operator of labs in Colombia. It also

asserted that Montano-Ortiz's role was "extensive," and he was "a leader" and "an organizer" of the criminal conspiracy. It therefore urged the court not to grant Montano-Ortiz's request for a variance.

The district court then explained that it had considered the parties' arguments, the PSI, the guidelines, and the statutory factors in 18 U.S.C. § 3553(a). The court formally adopted the PSI and its guidelines calculations, which led to an offense level of 37, a criminal history category of I, and a guidelines range of 210 to 262 months' imprisonment. *See* U.S.S.G. Ch. 5 Pt. A. The court then explained that Montano-Ortiz's offense was "very serious" and "involved" a large quantity of cocaine. In addition, he "operated at several levels of the drug organizations," as he "owned labs, transported drugs, [and] had contacts sufficiently to participate[] directly in large quantity sales in the United States." Next, it explained it had reviewed information from the probation office that "indicate[d] that for cases at this guideline level" the average and median term of imprisonment was 154 months. While the court did not find this "determinative," because Montano-Ortiz was not "within the average of those defendants," it found it was relevant. For these reasons, the district court granted in part Montano-Ortiz's motion for a variance and sentenced him to 180 months' imprisonment, to be followed by five years of supervised release. The court asked the parties whether they had any objections, and Montano-Ortiz reiterated his objection to the drug weight. The court later entered judgment consistent with its oral rulings, and Montano-Ortiz appealed.

## II. STANDARDS OF REVIEW

"We review the reasonableness of a district court's sentence for abuse of discretion," and apply a two-step process in doing so. *United States v. Trailer*, 827 F.3d 933, 935 (11th Cir. 2016). First, we evaluate "whether the district court committed any significant procedural error, such as miscalculating the advisory guideline range, . . . failing to consider the 18 U.S.C. § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Id.* at 936. In this step, we review *de novo* the proper interpretation and application of the Sentencing Guidelines, *United States v. Pulido*, 133 F.4th 1256, 1279 n.20 (11th Cir. 2025), but we review findings of fact for clear error, *United States v. Mandhai*, 375 F.3d 1243, 1247 (11th Cir. 2004). "[T]he district court's underlying determination of the drug quantity attributable to a defendant" during sentencing is a question of fact, so it is typically reviewed only for clear error. *United States v. Almedina*, 686 F.3d 1312, 1315 (11th Cir. 2012). The clear error standard is a deferential one and requires the district court's finding to provide us with a "definite and firm conviction that a mistake has been committed." *United States v. Isaac*, 987 F.3d 980, 990 (11th Cir. 2021) (citation omitted).

In the second step of our "two-step process," we review "whether the sentence is substantively reasonable in light of the totality of the circumstances and the § 3553(a) factors." *Trailer*,

24-12044          Opinion of the Court          13

827 F.3d at 935–36.[4] "In reviewing the [substantive] reasonableness of a sentence, we will not substitute our own judgment for that of the sentencing court and we will affirm a sentence so long as the court's decision was 'in the ballpark of permissible outcomes.'" *United States v. Butler*, 39 F.4th 1349, 1355 (11th Cir. 2022) (quoting *United States v. Rosales-Bruno*, 789 F.3d 1249, 1257 (11th Cir. 2015) (Opinion of E. Carnes, J.)). A party arguing a sentence is unreasonable bears "the burden of establishing the sentence is unreasonable in light of the record and the § 3553(a) factors." *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008). A court can abuse its discretion and impose an unreasonable sentence by failing to afford consideration to relevant factors that were due significant weight, by giving significant weight to an improper or irrelevant factor, or by committing a clear error of judgment in considering proper factors. *Butler*, 39 F.4th at 1356.

However, we review issues raised for the first time on appeal only for plain error. *United States v. Clark*, 274 F.3d 1325, 1326 (11th Cir. 2001). "To establish plain error, a defendant must show that there was an (1) error, (2) that is plain, and (3) that affects

---

[4] Under § 3553(a), a sentencing court must impose a sentence that is "sufficient, but not greater than necessary . . . to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the offense, . . . to afford adequate deterrence," and "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2). The court also must consider, among other factors, "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Id*. § 3553(a)(1), (6).

substantial rights." *United States v. Utsick*, 45 F.4th 1325, 1332 (11th Cir. 2022). "Where *all three* conditions are met, we may then exercise our discretion to notice a forfeited error, but only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (emphasis added).

## III. DISCUSSION

On appeal, Montano-Ortiz argues that the evidence against him did not identify a single co-conspirator and, instead, generally only addressed "matters he was not necessarily directly involved with." He contends this evidence was unreliable because it was based on Agent Baumert's "general knowledge of drug trafficking" rather than "on conduct necessarily attributable to" him. Moreover, he maintains the government failed to present sufficient evidence to support the 450 kilogram or more drug quantity against him. He contends this led to an unwarranted increase in his sentence, and that he is entitled to a resentencing that excludes those enhancements. The government notes that, because Montano-Ortiz did not raise these objections below, plain error review applies. It also argues that there was no error because Agent Baumert's testimony was not hearsay and, in any event, was reliable. Finally, the government asserts that any alleged error did not affect Montano-Ortiz's substantial rights.

### A. *The District Court did not Commit Procedural Error.*

As to the procedural aspect of Montano-Ortiz's argument, we need not decide the proper standard of review because under any standard, he must establish error, and he has not done so.

24-12044                Opinion of the Court                15

During sentencing, the government has the burden of proving the drug amount attributable to a defendant by a preponderance of the evidence. *Almedina*, 686 F.3d at 1315. The preponderance standard "simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence." *United States v. Owens*, 96 F.4th 1316, 1321 (11th Cir. 2024) (quoting *United States v. Watkins*, 10 F.4th 1179, 1184-85 (11th Cir. 2021)). When estimating the drug quantity attributable to a defendant, district courts may use "fair, accurate, and conservative estimates," but may not base their calculations on mere speculation. *United States v. Graham*, 123 F.4th 1197, 1285 (11th Cir. 2024); U.S.S.G. § 2D1.1. We "'accord great deference to the district court's credibility determinations' of drug-quantity witnesses." *United States v. Barsoum*, 763 F.3d 1321, 1333 (11th Cir. 2014) (quoting *United States v. Gregg*, 179 F.3d 1312, 1316 (11th Cir. 1999)).

A district court may also base its factual findings on reliable hearsay at sentencing. *United States v. Rodriguez*, 732 F.3d 1299, 1305 (11th Cir. 2013); U.S.S.G. § 6A1.3. While we have expressed a preference that district courts make specific findings on the reliability of hearsay testimony, we do not require it when the circumstances of the case prove that it is not necessary—for instance where the record shows the hearsay bears "sufficient indicia of reliability." *United States v. Baptiste*, 935 F.3d 1304, 1315–17 (11th Cir. 2019); *United States v. Johnson*, 980 F.3d 1364, 1373 (11th Cir. 2020). A defendant can show error by establishing the hearsay admitted against him at sentencing was "materially false or unreliable." *United States v. Ghertler*, 605 F.3d 1256, 1269 (11th Cir. 2010).

Federal agents' testimony regarding drug amounts attributable to a defendant may have sufficient indicia of reliability if the record supports their testimony. *See, e.g.*, *Johnson*, 980 F.3d at 1372–73; *United States v. Docampo*, 573 F.3d 1091, 1099 (11th Cir. 2009).

Here, Montano-Ortiz has not shown error in the district court's drug weight calculation. First, Montano-Ortiz agreed, during his guilty plea hearing, that he had planned for "shipments" of cocaine. He agreed, in his objections to the PSI, that his involvement in one such shipment included 270 kilograms of cocaine, and the district court found it probable that the "other shipments" amounted to over 180 kilograms of cocaine. Given these concessions, the question is whether the district court's finding—that it was more likely than not that other "shipments" of cocaine Montano-Ortiz was involved in involved at least 180 kilograms of cocaine—leaves us with a "definite and firm conviction that a mistake has been committed." *Isaac*, 987 F.3d at 990; *Owens*, 96 F.4th at 1321; U.S.S.G. § 2D1.1(c)(1).

The district court considered Agent Baumert's testimony and implicitly found him credible, and we give the district court significant deference in this respect. *Barsoum*, 763 F.3d at 1333. Thus, while aspects of Baumert's testimony were hearsay,[5] the record here reflected that it carried sufficient indicia of reliability. *See Johnson*, 980 F.3d at 1372; *Baptiste,* 935 F.3d at 1315–17. Moreover,

---

[5] For instance, Baumert testified about information conveyed to him by other law enforcement officers regarding communications intercepted during the investigation that the DEA traced to Montano-Ortiz.

nothing in the record suggests Baumert's testimony was "materially false or unreliable." *Ghertler*, 605 F.3d at 1269.

According to Baumert, the DEA was able to track Montano-Ortiz's communications after he supplied an informant with his PIN, and those communications allowed multiple shipments of cocaine to be attributed to him. Montano-Ortiz also identified himself on more than one phone call that was intercepted by law enforcement, on devices discovered because of his PIN.

As for the June 2017 100-kilogram shipment seized in Panama, Montano-Ortiz had a long conversation with a co-conspirator the day the cocaine was seized that included him receiving a message stating, "they got them," photographs of the crime scene, and a news story about the seizure. As to the 836-kilogram shipment, Montano-Ortiz and co-conspirators discussed the seizure, including where it occurred and its ramifications. Baumert conceded he had no direct evidence that the photographs of the shipments sent to and by Montano-Ortiz were cocaine and had no confirmation that the cocaine seized in Central America was properly tested by foreign authorities. Still, the court did not clearly err in finding that the shipments were cocaine, considering the totality of the evidence in the case and Montano-Ortiz's plea admissions. In addition, Agent Baumert's testimony provided evidence that Montano-Ortiz owned a cocaine-manufacturing laboratory. Communications showed Montano-Ortiz sent out pictures of cocaine that he made in the laboratory, invited a co-conspirator to view the

laboratory, and stated that he could guarantee the purity of the cocaine produced because he was the one making it.

The totality of the evidence does not leave us with a definite and firm conviction that the district court erred in finding that 450 kilograms was a "conservative estimate[]" of the cocaine Montano-Ortiz was involved with, and using it to calculate Montano-Ortiz's guidelines range. *Graham*, 123 F.4th at 1285. Accordingly, we affirm on this issue.

### B. Montano-Ortiz has not shown his Sentence is Substantively Unreasonable.

As summarized above, Montano-Ortiz's primary challenge to his sentence is based on his contention that the district court improperly relied on hearsay evidence in establishing the drug weight attributable to him. To the extent that he raises a separate substantive reasonableness challenge, he does not show an abuse of discretion. *Gonzalez*, 550 F.3d at 1324. First, to the extent that his argument is that the district court focused on an improper factor by considering Baumert's testimony, we have rejected that argument above. Second, Montano-Ortiz's 180-month sentence was lower than what the government requested and was a downward variance from the guidelines range. *See United States v. Sarras*, 575 F.3d 1191, 1220 (11th Cir. 2009) ("[W]e ordinarily expect sentences within the advisory guidelines range to be reasonable."). It was also "well below the statutory maximum" sentence of life imprisonment, another indicator of reasonableness. *United States v. Riley*, 995 F.3d 1272, 1278 (11th Cir. 2021) (quoting *United States v. Stanley*,

739 F.3d 633, 656 (11th Cir. 2014)); 21 U.S.C. § 960(b)(1)(B)(ii). Finally, the district court discussed several relevant § 3553(a) factors—including the severity of Montano-Ortiz's conduct and the need to avoid unwarranted sentencing disparities, 18 U.S.C. § 3553(a)(1), (6)—and gave a reasoned explanation for its chosen 180-month sentence. *Butler*, 39 F.4th at 1355 (explaining that a district court must consider all relevant § 3553(a) factors, but "the weight given to each factor is committed to the sound discretion of the district court" and it may attach great weight to one factor over the others). In sum, the court did not fail to afford consideration to relevant factors that were due significant weight, give significant weight to an improper or irrelevant factor, or commit a clear error of judgment in considering proper factors. *Id.* at 1356. Accordingly, we affirm on this issue as well.

## IV. CONCLUSION

For the reasons we have explained, we find no reversible error. Accordingly, we affirm Motano-Ortiz's sentence.

**AFFIRMED.**